**STOVES, Inc. v. TENNESSEE ENAMEL MFG, CO.**

Civ. No. 933.

United States District. Court M. D. Tennessee, Nashville Division.

April 10, 1950.

Williams, Cummings & West, Nashville, Tenn., for plaintiff.

Armistead, Waller, Davis & Lansden, Nashville, Tenn., for defendant.

DAVIES, District Judge.

This cause came on for hearing before the Court on September 8, 1949, and subsequent days.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact.

1. The plaintiff is a corporation organized, existing and doing business under the laws of the State of Louisiana with its prin-

826

cipal place of business in New Orleans, Louisiana. Although the plaintiff has had an office and place of business in Tampa, Florida, since the middle part of 1947, it has been since that time, and was at the time of the trial of this cause, a citizen and inhabitant of the State of Louisiana. The plaintiff is a distributor or jobber or a wholesale dealer in gas heating stoves and floor furnaces.

The defendant is a corporation organized, existing and doing business under the laws of the State of Tennessee with its principal place of business in Davidson County, Tennessee. The defendant is a manufacturer of gas heating stoves and floor furnaces of various types and kinds and is engaged in manufacturing the same and selling them through agents, distributors, jobbers and wholesale dealers.

The amount in controversy in this case exceeds, exclusive of interest and costs, the sum of Three Thousand ($3,000.00) Dollars.

2. During the early and middle part of 1947, the Tennessee Enamel Manufacturing Company was without a distributor for the State of Florida. The plaintiff was organized for the purpose of doing business as a distributor or wholesale dealer of gas heating stoves and floor furnaces and Mr. Evans, president of the corporate defendant, had known of the fact that Stoves, Inc., was organized when it was organized. Mr. W. B. Hunt, the sales representative of the defendant, and Mr. W. B. Evans, the president of the corporate defendant, were anxious to obtain a distributor for the State of Florida and it was agreed to between the plaintiff and the defendant that the plaintiff would have the exclusive distributorship for the State of Florida for the remainder of the year 1947. Upon Mr. Evans promising the plaintiff that it could have said distributorship the plaintiff accordingly entered upon performance of the agreement by opening offices in Florida, making preparations to sell and distribute the defendant's stoves, and shortly thereafter commenced selling and distributing said stoves. The plaintiff had a very satisfactory season for the remainder of the year of 1947.

There was no contract between the plaintiff and the defendant as alleged in the complaint for the sale and purchase of five carloads of stoves. That is, there was no definite or specific contract which might be enforced in a court of law or equity, nor was there a contract for the sale and purchase of five carloads of stoves as used in the ordinary course of trade. There were no specifications mentioned as to models or types of stoves, and no definite prices on any definite quantities of stoves. The evidence as to whether there was an offer and acceptance was most indefinite. However, it had been agreed between the plaintiff and the defendant in 1947 that plaintiff should be defendant's distributor in Florida for the remainder of 1947, and in the last days of 1947 defendant's president, Mr. Evans, made a trip to New Orleans, combining business and pleasure, and at that time Mr. Evans, on behalf of the defendant agreed that plaintiff's franchise or distributorship should continue in 1948 and made a commitment to plaintiff that defendant would furnish at least five carloads of stoves for the year 1948. It was not known at that time whether the scarcity of steel and shortage of stoves would continue and plaintiff was anxious to know whether or not it could get shipments of stoves. There was no written or oral contract about the length of the term the distributorship should run, but these distributorships usually ran from year to year, and that being the practice and custom in the business, the rules of usage and custom apply and the distributorship was for the entire year 1948. The Court is aided in finding that there was a franchise or distributorship for the year 1948 by the fact that plaintiff went ahead and made plans to sell defendant's products for the year 1948, and mainly by the fact that in January, 1948, plaintiff had an exhibit at the Gasparilla Day Fair and displayed defendant's products, among others, spending $900 on the exhibit, of which defendant contributed $100.

3. The Court further finds that the agreement made by the plaintiff and the defendant to the effect that the plaintiff would be granted the exclusive distributorship franchise for the State of Florida during

the year of 1948 and that the defendant would furnish the plaintiff with at least five carloads of stoves, was made in the offices of Stoves, Inc., New Orleans, Louisiana, and that the same was a Louisiana contract. The stoves to be furnished by plaintiff were to be manufactured in the State of Tennessee and they were to be distributed by the plaintiff in the State of Florida.

4. In March of 1948 the contract for the distributorship franchise of Stoves, Inc., was unlawfully breached by the Tennessee Enamel Manufacturing Company, entitling the plaintiff to recover damages and under all the facts and circumstances of the case the Court finds that the plaintiff suffered damages in the sum of Seven Thousand Five Hundred ($7,500.00) Dollars which it is entitled to recover in this cause.

### Conclusions of Law.

1. In view of the foregoing findings stated in Paragraph 1 of the Court's Findings of Fact, the Court concludes that it has jurisdiction of this case because of the diversity of citizenship of the parties and the requisite amount in controversy.

2. In view of the foregoing findings stated in Paragraph 2 of the Court's Findings of Fact, the Court concludes that there was a binding contract between the plaintiff and the defendant whereby the plaintiff was to be the exclusive distributor for the defendant in the State of Florida for the year of 1948 and that the defendant was obligated to furnish to the plaintiff at least five carloads of stoves during the year of 1948.

3. In view of the foregoing findings stated in the Court's findings of fact, the Court concludes that the validity of the contract between the plaintiff and the defendant, is not affected by the statutes of frauds pleaded by defendant.

4. In view of the foregoing findings stated in the Court's Findings of Fact, and in view of all of the evidence in this case, the Court concludes that the contract of distributorship was breached by the defendant and that the plaintiff was damaged thereby, and that the plaintiff is entitled to

recover from the defendant the sum of Seven Thousand Five Hundred ($7,500.00) Dollars therefor.

Judgment accordingly.